IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CIV. NO. 10-00738 SOM/LEK |
| --- | --- | --- |
| | ) | CR. NO. 08-00501 SOM |
| Plaintiff, | ) | |
| | ) | ORDER DENYING PETITIONER'S |
| vs. | ) | MOTION UNDER 28 U.S.C. |
| | ) | § 2255 TO VACATE, SET ASIDE, |
| JORGE MEDINA ACEVES, | ) | OR CORRECT SENTENCE BY A |
| | ) | PERSON IN FEDERAL CUSTODY |
| Defendant. | ) | |
| _____ | ) | |

ORDER DENYING PETITIONER'S MOTION
UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE,
OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

I.   INTRODUCTION.

On December 10, 2010, Jorge Medina Aceves ("Medina Aceves") filed a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody." See "Mot.", ECF No. 30.[1]  Medina Aceves argues that his former attorney failed to properly advise him of the immigration consequences of his plea agreement with the Government.  In light of the recent Supreme Court decision in Padilla v. Kentucky, 130 S. Ct. 1473 (2010), Medina Aceves seeks to set aside his January 8, 2009, conviction.  The court denies this motion.

II.  FACTUAL BACKGROUND.

On July 20, 2008, Medina Aceves was arrested for being present in the United States without inspection, in violation of section 212(a)(6)(A)(i) of the Immigration and Nationality Act

---

[1] All CM/ECF filings cited in this Order refer to Medina Aceves's criminal case, Crim. No. 08-00501 SOM.

("INA"), 8 U.S.C. § 1182(a)(6)(A)(i).  On the same day, Medina Aceves was questioned by Immigration and Customs Enforcement ("ICE") officials.  See ECF No. 38, Ex. B.  He admitted that he was not a citizen or national of the United States, that he had entered the United States without inspection in February 1996, and that he had used a fraudulent alien registration card and social security card to obtain employment.  See Declaration of Amy Garon ("Garon Decl."), ECF No. 39, ¶ 5; ECF No. 38, Ex. B at 1.  Also on July 20, 2008, Medina Aceves was served with a Notice to Appear ("NTA") before an Immigration Judge for removal proceedings.  See ECF No. 38, Ex. C.

On July 31, 2008, a criminal complaint was filed against Medina Aceves in this court.  See ECF No. 38, Ex. D.  Medina Aceves was arrested the same day, and Jeffrey Arakaki was appointed as counsel for Medina Aceves under the Criminal Justice Act ("CJA").  See Declaration of Jeffrey T. Arakaki ("Arakaki Decl."), ECF No. 40-1, ¶ 1.  On August 13, 2008, Medina Aceves was charged in a three-count Indictment for the following criminal offenses:  Count 1 - I-9 Employment Verification Fraud, in violation of 18 U.S.C. § 1546(b)(1); Count 2 - Misrepresentation of Social Security Number, in violation of 42 U.S.C. § 408(a)(7)(B); and Count 3 - Possession of Fraudulent Alien Registration Card, in violation of 18 U.S.C. § 1546(a).  See ECF No. 38, Ex. E.

On September 15, 2008, pursuant to a plea agreement, Medina Aceves pled guilty to Counts 1 and 2 of the Indictment, and the Government agreed to dismiss Count 3. See ECF No. 38, Ex. H. On January 8, 2009, this court sentenced Medina Aceves to time served and three years of supervised released. See ECF No. 38, Ex. K at 10; lines 11-14. As a condition of supervised release, the court also ordered Medina Aceves to participate in removal proceedings required by the Department of Homeland Security. See id. at 7; lines 17-20. The judgment was filed on January 22, 2009, see ECF No. 26, and Medina Aceves did not appeal.

On December 10, 2010, Medina Aceves filed this § 2255 motion. Relying on the 2010 Supreme Court case of Padilla v. Kentucky, Medina Aceves argues that his conviction should be vacated because his trial counsel allegedly failed to inform him that a guilty plea would subject him to removal.

III.   STANDARD OF REVIEW.

Under 28 U.S.C. § 2255, a court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration on the ground that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to

3

collateral attack. 28 U.S.C. § 2255(a). A petitioner must allege specific facts that, if true, entitle the petitioner to relief. See United States v. Howard, 381 F.3d 873, 877 (9th Cir. 2004); United States v. Rodrigues, 347 F.3d 818, 824 (9th Cir. 2003) (citing United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996)).

A judge may dismiss a § 2255 motion if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Section 2255 Rules. A court need not hold an evidentiary hearing if the allegations are "palpably incredible or patently frivolous," or if the issues can be conclusively decided on the basis of the evidence in the record. See Blackledge v. Allison, 431 U.S. 63, 76 (1977); see also United States v. Mejia-Mesa, 153 F.3d 925, 929 (9th Cir. 1998) (noting that a "district court has discretion to deny an evidentiary hearing on a § 2255 claim where the files and records conclusively show that the movant is not entitled to relief"); Frazer v. United States, 18 F.3d 778, 781 (9th Cir. 1994). Even if this court accepts Medina Aceves's factual assertions as true (without making any actual finding), Medina Aceves cannot prevail. For that reason, this court finds no reason to conduct a hearing. See Local Rule 7.2(d).

IV.   ANALYSIS.

   A.   *Padilla* Does Not Require The Granting of This Motion.

Motions brought under § 2255 are subject to a one-year statute of limitations. 28 U.S.C. § 2255(f). This one-year period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Under § 2255(f)(1), a petitioner must commence his or her action within one year of "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Medina Aceves's conviction became final on January 22, 2009, and his rights under § 2255 expired a year later. As Medina Aceves filed the present § 2255 motion on December 10, 2010, his motion falls outside the one-year statute of limitations as measured by

§ 2255(f)(1).

On March 31, 2010, the Supreme Court held that, to be constitutionally effective, counsel "must inform her client whether his plea carries a risk of deportation." Padilla, 130 S. Ct. at 1486. Medina Aceves alleges that Arakaki failed to properly advise him that his guilty plea might result in his removal. Medina Aceves argues that Padilla created a newly recognized right that is retroactively applicable to cases on collateral review. See Mot. at 4. He claims that, under § 2255(f)(3), Padilla resets the one-year clock to begin running on the date of the decision on March 31, 2010. See id. Thus, he says, his statute of limitation actually expires in March 2011.

If Padilla merely restates existing law, then it certainly does apply to all cases, including collateral attacks such as the § 2255 action Medina Aceves brings here. See Whorton v. Bockting, 549 U.S. 406, 416 (2007) (construing Teague v. Lane, 489 U.S. 288 (1989), as holding that an old rule applies to all cases, but a new rule applies only to cases on direct review, not to collateral actions). However, if Padilla merely restates existing law or is dictated by cases that governed at the time Medina Aceves pled guilty, then Padilla, decided in March 2010, does not assist Medina Aceves at all at this time. That is because a restatement in March 2010 of existing law cannot serve as the reason to restart the limitations period. Medina Aceves

6

should have relied on then-existing law to timely make (by January 2010) the arguments he now makes, instead of waiting for a restatement of that law some months after the limitations period had run.

If Padilla states a new rule, it does not apply retroactively to a collateral attack unless the rule fits within an exception to the general principle that new rules do not apply retroactively to collateral attacks. Id. Thus, for Medina Aceves to establish that Padilla applies retroactively to the present action, Medina Aceves must show that the rule enunciated in Padilla is new and that it falls into one of those exceptions.

Whether Padilla states a new rule is unclear. This court has not found a federal appellate decision addressing this issue but notes that district courts are split on that issue. Compare Doan v. United States, --- F. Supp. 2d ---, 2011 WL 116811, at *3 (E.D. Va. Jan. 4, 2011); United States v. Hough, No. 2:02-cr-00649-WJM-1, 2010 WL 5250996, at *3-4 (D.N.J. Dec. 17, 2010); United States v. Perez, No. 8:02CR296, 2010 WL 4643033, at *2 (D. Neb. Nov. 9, 2010) (all stating that Padilla states a new rule) with Marroquin v. United States, Civil Action No. M-10-156, 2011 WL 488985, at *2 (S.D. Tex. Feb. 4, 2011); Luna v. United States, No. 10CV1659 JLS (POR), 2010 WL 4868062, at *3-4 (S.D. Cal. Nov. 23, 2010); United States v. Shafeek, Criminal Case No. 05-81129/Civil Case No. 10-12670, 2010 WL

7

3789747, at *3 (E.D. Mich. Sept. 22, 2010); Martin v. United States, No. 09-1387, 2010 WL 3463949, *3 (C.D. Ill. Aug. 25, 2010); Al Kokabani v. United States, Nos. 5:06-CR-207-FL, 5:08-CV-177-FL, 2010 WL 3941836, *4-6 (E.D.N.C. July 30, 2010); United States v. Millan, Nos. 3:06cr458/RV, 3:10cv165/RV/MD, 2010 WL 2557699, at *1 (N.D. Fla. May 24, 2010) (all stating that Padilla does not state a new rule).

This court need not resolve the issue of whether Padilla states a new rule or not, because, even if Padilla does state a new rule, Medina Aceves cannot prevail.

First, Medina Aceves does not point to any applicable exception that rescues the present case from the general bar on the application of new rules to collateral attacks. Thus, for example, he does not argue, much less show, that the rule announced in Padilla places any private, individual conduct beyond the power of criminal lawmaking authority to proscribe, or that the rule states a requirement implicit in the concept of ordered liberty. See Teague, 489 U.S. at 311 (listing rules in those two categories as exceptions to the general bar on application of new rules to collateral attacks).

The first category is inapplicable. While Medina Aceves may be thinking that he fits within the second exception, this court has found no judicial decision construing Padilla as stating a new rule that falls within the "ordered liberty"

8

exception.

As the court noted in Mudahinyuka v. United States, No. 10 C 5812, 2011 WL 528804, at *4 n.1 (N.D. Ill. Feb. 7, 2011), the Supreme Court has stated that the "ordered liberty" exception is "reserved for watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." The Supreme Court "[has] yet to find a new rule that falls under the second Teague exception." Beard v. Banks, 542 U.S. 406, 417, 124 S. Ct. 2504, 159 L. Ed. 2d 494 (2004) (internal quotations omitted). In Doan v. United States, --- F. Supp. 2d ---, 2011 WL 116811, at *3 (E.D. Va. Jan. 4, 2011), the court similarly held that Padilla is not subject to the "ordered liberty" exception, given the Supreme Court's repeated emphasis on the "limited scope of [this] exception" as stated in Beard, 542 U.S. at 416. See also Shafeek, 2010 WL 3789747, at *3 ("Even if the Padilla decision is considered a 'new rule,' it is unlikely that Shafeek can meet one of the two exceptions set forth in Teague."). This court is unpersuaded by anything submitted by Medina Aceves that the "ordered liberty" exception applies.

Second, even if the "ordered liberty" exception applies, the present motion fails because, as discussed in the next section of this order, Medina Aceves does not make the necessary showing that he was prejudiced by his counsel's alleged

9

failure to advise him that he would be removed from the United States.

        B.        <u>Medina Aceves Does Not Show Prejudice.</u>

Even if Medina Aceves's § 2255 motion were not time-barred, it fails because Medina Aceves does not demonstrate prejudice. To demonstrate a violation of a constitutional right to counsel, a petitioner must demonstrate that counsel's performance was below an objective and professional norm and that he was prejudiced by this inadequacy. <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984). Failure to demonstrate either prong will defeat an ineffective assistance of counsel claim. <u>Id.</u> The record demonstrates that Medina Aceves was aware that he would be removed. Indeed, he was already the subject of removal proceedings before he was indicted.[2]

Medina Aceves argues that Arakaki failed to inform him that his conviction would result in removal. <u>See</u> Mot. at 4. Arakaki, by contrast, says that he "unequivocally informed"

---

[2] <u>See</u> <u>Gudiel-Soto v. United States</u>, --- F. Supp. 2d ---, 2011 WL 256297, at *4 (D.N.J. Jan. 25, 2011) (not addressing retroactivity of <u>Padilla</u> because the petitioner could not demonstrate prejudice sufficient to satisfy the second prong of the <u>Strickland</u> test); <u>United States v. Obonaga</u>, No. 10-CV-2951, 2010 WL 2710413, *1-2 (E.D.N.Y. June 30, 2010) (assuming <u>arguendo</u> that <u>Padilla</u> applies retroactively, but finding that the petitioner failed to demonstrate prejudice); <u>Toribio-Ascencio v. United States</u>, Nos. 7:05-cr-97-FL, 7:08-cv-211-FL, 2010 WL 4484447 at *4 (E.D.N.C. Oct. 25, 2010) ("Assuming <u>arguendo</u> that Padilla does apply retroactively, petitioner's claim would still fail").

Medina Aceves that he would most likely be deported after serving his sentence in the criminal case. See Arakaki Decl. ¶ 7. Even if the court assumes (without finding) that Arakaki did not so advise Medina Aceves, Medina Aceves knew that he was facing removal. Before the criminal complaint was filed on July 31, 2008, Medina Aceves had already been commanded to appear before an Immigration Judge for removal proceedings. See ECF No. 38, Ex. C.

During the change of plea proceedings, this court also informed Medina Aceves of the possible immigration consequences of his plea:

| | |
|---|---|
| The court: | Now, in your case it is highly likely that you are going to be sent out of the country by immigration authorities. Do you understand that? |
| The Defendant: | Yes. |
| The court: | And that will be after you finish your prison term. Do you understand that? |
| The Defendant: | Yes. |

See ECF No. 38, Ex. I at 11; lines 7-13.

On January 6, 2009, Arakaki filed a Sentencing Memorandum to which was attached a letter by Medina Aceves indicating awareness of and wish for removal to Mexico. See ECF No. 38, Ex. J. In his letter to the court, Medina Aceves wrote, "Now I only hope to go back to my country as soon as possible, so

I can be with my family once again." Id.  At the sentencing proceedings, Medina Aceves seemed to acknowledge that he would be deported to Mexico.  See ECF No. 38, Ex. K at 6; lines 5-6 ("So I think it's time to come back to Mexico.").  While these statements were made after Medina Aceves had already pled guilty, they corroborate the court's conclusion that, even in the alleged absence of advice from Arakaki on the subject of removal, Medina Aceves was very much aware that he would not be allowed to remain in the United States.  His allegation that he was unaware of the potential immigration consequences of his guilty plea is thus contradicted by the record.

Unlike the defendant in Padilla, who had been a legal permanent resident of this country for over 40 years, Medina Aceves is an illegal alien.  Medina Aceves has admittedly been in this country illegally since 1996 and had a counterfeit alien registration card and social security card.  See ECF No. 38, Ex. B at 1.  On July 20, 2008, Medina Aceves was served with a document requiring his appearance before an Immigration Judge for removal proceedings.  See ECF No. 38, Ex. C.  Thus, even had he not pled guilty, immigration proceedings were already in progress.  Had he gone to trial instead of pleading guilty, he would not have been transformed into a legal resident.  This is so even if he had been acquitted.  In other words, it was not his conviction that made him removable.  Removal therefore should not

reasonably have affected his decision to plead guilty, and he cannot show prejudice flowing from that plea, even if Arakaki failed to inform him about removal. See United States v. Gutierrez Martinez, Criminal No. 07-91(5) ADM/FLN/Civil No. 10-2553 ADM, 2010 WL 5266490, at *4 (D. Minn. Dec. 17, 2010); Grigorian v. United States, Nos. 09-22708-Cv-Martinez, 05-60203-Cr-Martinez, 2010 WL 2889929, at *6 (S.D. Fla. June 18, 2010).

Medina Aceves does even allege that Arakaki, like Padilla's counsel, told him "not to worry about deportation since he had lived in this country so long." See Padilla, 130 S. Ct. at 1475-76. Nor is Medina Aceves in a position analogous to that discussed in the recent Ninth Circuit case of United States v. Bonilla, No. 09-10307 (9th Cir. Mar. 11, 2011), the Ninth Circuit's first application of Padilla, albeit in a context not presenting the retroactivity issue analyzed above.

Bonilla involved a man who had been a legal resident of the United States for over 30 years and who was charged with possession of an unregistered firearm and with being a felon in possession of a firearm. His wife and children were United States citizens. He pled guilty, then moved to withdraw his guilty plea on the ground that his lawyer had failed to tell him the deportation consequences of conviction. Slip op. at 3422. Before he pled guilty, his wife had asked his trial lawyer whether the charges would result in deportation. Id. at 3423.

13

The attorney told her that she would look into the matter but never did, then failed to provide any information about immigration consequences to Bonilla or his wife prior to the plea hearing. Id. The Ninth Circuit found that "a reasonable person in Bonilla's position could have well interpreted the lawyer's silence to mean that pleading guilty would not place him in jeopardy of deportation." Id. at 3428.

Unlike Bonilla, Medina Aceves knew before criminal proceedings commenced that he faced potentially adverse immigration consequences. The NTA informed Medina Aceves that he was subject to removal proceedings. Pre-sentence and sentencing records corroborate his knowledge of removal consequences. While Bonilla's attorney claimed that she was under the belief that Bonilla was a United States citizen at the time he pled, id. at 3424, nothing in the record before this court suggests that Arakaki labored under such a misapprehension. See ECF No. 38, Ex. G at 3; Garon Decl. ¶ 9; Arakaki Decl. ¶ 5. Furthermore, the Bonilla court noted that the district court had not informed the defendant of the possibility of deportation. Slip op. at 3430 ("Neither Bonilla's lawyer nor the judge at Bonilla's plea hearing ever addressed the subject of deportation."). This court, however, warned Medina Aceves during the plea colloquy of the strong possibility that he would be removed after serving his criminal sentence. See ECF No. 38, Ex. I at 11; lines 7-13.

14

Medina Aceves makes the additional argument that, had Arakaki informed him that he would be eligible for cancellation of removal, he would not have pled guilty. To be eligible for Cancellation of Removal for Certain Nonpermanent Residents, Medina Aceves would have to establish that: 1) he had been physically present in the United States for a continuous period of not less than ten years; 2) he was a person of good moral character during such period; 3) he had not been convicted of certain crimes; and 4) removal would result in exceptional and unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence. See INA § 240A(b)(1); 8 U.S.C. § 1229b(b)(1). Nothing in Padilla required Arakaki to counsel Medina Aceves about cancellation of removal. Even if Arakaki had been so required, Medina Aceves must make some showing of how he would have established all four elements to show prejudice. He does not do this at all.

V. CONCLUSION.

For the foregoing reasons, the court DENIES Medina Aceves's motion to vacate, set aside, or correct sentence. Because Medina Aceves has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED. See 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED: Honolulu, Hawaii March 17, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

United States of America v. Medina Aceves, Civ. No. 10-00738 SOM/LEK; Cr. No. 08-00501 SOM; ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY.